**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| LAWANDA M. MCGLONE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| | : | |
| v. | : | CIVIL ACTION |
| | : | No:  06-4850 |
| | : | |
| ALLEGHENY VALLEY | : | |
| SCHOOL, | : | |
| | : | |
| Defendant. | | |

**May 16 , 2008**                                              **Anita B. Brody, J.**

_____

**MEMORANDUM AND ORDER**

Plaintiff LaWanda M. McGlone ("McGlone") brought this action against Defendant

Allegheny Valley School ("AVS") alleging: (1) sexual harassment under Title VII; (2) gender

discrimination and retaliation under Title VII; (3) intentional infliction of emotional distress; (4)

negligence; and (5) gender discrimination, sexual harassment, and retaliation under the

Pennsylvania Human Relations Act ("PHRA").  Jurisdiction is proper under 28 U.S.C. §§ 1331

and 1367.  Currently before me is AVS's motion for summary judgment on all counts.  Because

McGlone does not raise or discuss her state law negligence claim in her response to AVS's

motion for summary judgment, I consider this claim withdrawn.

1

## I. BACKGROUND

For purposes of summary judgment, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Here, the facts are stated in the light most favorable to McGlone, and all reasonable inferences are drawn in McGlone's favor. *Anderson*, 477 U.S. at 255.

On August 1, 2005, AVS hired McGlone as a House Manager Aide at its Susquehanna group home ("Susquehanna"). McGlone was hired as a full time employee to work on Saturdays and Sundays from 7:00 a.m. to 11:00 p.m.[1] McGlone had the same working hours as Nicole Mathias ("Mathias"), another House Manager Aide at Susquehanna. The direct supervisor of Mathias and McGlone was Flora Figueroa ("Figueroa"), the House Manager at Susquehanna. As House Manager, Figueroa resided at Susquehanna. Although Figueroa was off duty on Saturdays and Sundays, she spent most of her time during weekends at Susquehanna.

In September, 2005, Figueroa began acting inappropriately toward McGlone. The following is a list of the offensive incidents involving Figueroa that McGlone could recall:

- On a couple of occasions, Figueroa told McGlone that "if she had titties and an ass like [McGlone's] she wouldn't have to work." (McGlone Dep., p. 74, lines 6-

---

[1] For approximately the first week and a half of her employment, McGlone attended orientation. During this orientation, McGlone attended a session reviewing the contents of the Employee Manual. Additionally, McGlone received a copy of AVS's Employee Manual to take home and review for one night; however she was not allowed to keep the manual and was not told how she could obtain a copy of it in the future. The Employee Manual contained both non-discrimination and non-harassment policies. On August 2, 2005, McGlone signed a statement confirming that she had read the manual and that she agreed to comply with its policies and procedures.

8 & p. 79, lines 12-17).

- On a couple of occasions, Figueroa "rubbed up against" McGlone and stated that McGlone's "ass and breasts were too big, they shouldn't be in the way." (McGlone Dep., p. 81, lines 17-21).

- Figueroa told McGlone "that a baby would be glad to suck on [McGlone's] titties." (McGlone Dep., p.74, lines 8-9).

- Figueroa told McGlone that "she wished she had an ass like [McGlone's]." (McGlone Dep., p.74, line 17).

- Figueroa told McGlone that "she wished she had an ass like a black woman."[2] (McGlone Dep., p.79, lines 4-5).

- Figueroa told McGlone that "[i]f she could pimp [McGlone] she would be rich." (McGlone Dep., p.74, lines 5-6).

- Figueroa made statements that McGlone and Mathias were "lesbians" (McGlone Dep., p. 74, lines 12-14).

- Figueroa told McGlone that "her husband didn't give her any penis in three weeks and that's why she was ready to try a woman." (McGlone Dep., p.74, lines 17-19).

- Figueroa told McGlone that "[s]he hadn't had it in a while, that's why her face was breaking out." (McGlone Dep., p.74, lines 19-21).

- Figueora told Mathias in McGlone's presence that Mathias' "cooking was so good that all she would need is a dildo to take her away from her husband." (McGlone

---

[2] McGlone is African American.

Dep., p. 78, lines 3-5).

After each of these incidents, McGlone was able to complete her shift and perform her job duties.   McGlone found Figueroa's conduct demeaning, humiliating and embarrassing. As a result of Figueroa's actions, McGlone felt sick to her stomach, worried about going to work, and suffered occasional headaches.

On the weekend of December 17, 2005, McGlone did not report to work on either Saturday or Sunday.  McGlone did not alert AVS that she would be absent on the weekend of December 17, 2005, even though she knew that AVS required her to call in advance to report her absence.  AVS had the following attendance policy in its Employee Manual:

I.      Reporting Off Duty Procedure

Employees must report off each and every time (day) they will not be coming to work as scheduled, at least one hour prior to their scheduled shift. . . .

II.     AWOL

If an employee does not report off work . . . that employee will be considered AWOL (Away Without Official Leave).  Being AWOL will result in disciplinary action, up to and including termination. . . .

In the first instance of an employee being AWOL, said employee must present an excuse acceptable to Allegheny Valley School for being away without official leave.  Failure to present an excuse which is acceptable to Allegheny Valley School will result in termination. . . .

For the second instance of AWOL, employee will be immediately terminated, regardless of the excuse.

On December 19, 2005, AVS's Human Resources Manager, Helene Bertino ("Bertino"), sent the following letter to McGlone:

You did not report to work as scheduled, nor report off work correctly since December 17, 18, 2005 per Allegheny Valley School policy (see attached).  This

4

is considered AWOL ["Absent Without Official Leave"].

If you do not present an excuse acceptable to Allegheny Valley School for your AWOL you will be immediately terminated.  In the event you do present an excuse acceptable to Allegheny Valley School, please be advised that your second instance of AWOL will result in immediate termination regardless of the excuse therefore.

If you do not contact Richard Snyder, by December 23, 2005, you will be considered to have abandoned your position.

Prior to receiving this letter in the mail, McGlone had never reported Figueroa's conduct to any of her supervisors.  Furthermore, when McGlone failed to report to work on the weekend of December 17, 2005, it was her intention to quit her job because she "had enough."  (McGlone Dep., p.86 lines 22-23).  However, after she received the letter from Bertino, sometime around December 21, 2005, McGlone decided to call Administrator, Richard Snyder ("Snyder").  During the phone conversation with Snyder, McGlone told him that she was being sexually harassed by Figueroa and explained that this was why she did not report to work on the weekend of December 17, 2005.  Snyder reported the substance of his conversation with McGlone to Bertino. Together Bertino and Snyder then reported McGlone's allegations to Richard Rizzutto ("Rizzutto"), AVS's Director of Human Resources.

In response to McGlone's allegations, Bertino sent a letter to McGlone on December 23, 2005 that stated it was AVS's understanding that McGlone was unwilling to report to work because of harassment.  Furthermore, the letter stated:

Allegheny Valley School takes this allegation very seriously.  It is our duty and responsibility to investigate your allegations.  Therefore, we need to meet with you to discuss the reasons for your AWOL and to discuss your allegations.  I have set aside Thursday, December 29, 2005, at 10:00 A.M. to meet with you . . . .  If you are not able to come at that time, please advise me a time that you are available . . . .  If I do not hear from you, we will make our decision based on the

5

information we have.

Although McGlone received this letter she did not meet with Human Resources Manager, Bertino on December 29, 2005, she never contacted Bertino or anyone else at AVS to arrange another time to meet, and she never returned to work.

On December 29, 2005, AVS began an investigation into the allegations against Figueroa. This investigation consisted of interviews with Figueroa and other employees who had worked at Susquehanna. Many of the employees interviewed had not worked with McGlone on weekends or had only worked with her on an isolated shift. As part of the investigation, each employee gave a signed statement. With the exception of the statements given by Figueroa and one employee, these statements were each one-line long. Some of the statements given by employees suggest that the investigative questions did not properly address McGlone's allegation that her employer sexually harassed her. For instance, one statement reads, "I have never heard [of] any inappropriate sexual activity going on . . ." and another statement reads that the employee "has never been sexually abuse[d] by any one/ nor have I seen it done to any of our clients." (Defendant's Ex. 22, statements of Sharemah Gambrel and Nicole Williamson). During the investigation, AVS never attempted to contact McGlone to discuss the allegations. In early January, based on the collected statements, AVS concluded that the allegations against Figueroa were unfounded. There is no evidence that AVS prepared any written document or investigative report stating its conclusion.

On January 11, 2006, AVS issued a Change of Status form to McGlone, which indicated that McGlone was discharged from AVS on December 17, 2005 because she had been AWOL.

## II.  LEGAL STANDARD

Summary judgment should be granted under Federal Rule of Civil Procedure 56(c) "if, after drawing all reasonable inferences from the underlying facts in the light most favorable to the non-moving party, the court concludes that there is no genuine issue of material fact to be resolved at trial and the moving party is entitled to judgment as a matter of law." *Kornegay v. Cottingham*, 120 F.3d 392, 395 (3d Cir. 1997).  A factual dispute is "genuine" if the evidence would permit a reasonable jury to find for the non-moving party.  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).  In order to survive summary judgment, a plaintiff must make a showing "sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The court must draw all reasonable inferences in the non-moving party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.  DISCUSSION

McGlone's complaint contains allegations of sexual harassment and retaliation under both Title VII and the PHRA.  Because Title VII and the PHRA have identical legal standards, I combine the discussion of McGlone's claims under Title VII and the PHRA.[3]

### A.  Sexual Harassment in Violation of Title VII and the PHRA

Title VII makes it unlawful for an employer "to discriminate against any individual with

---

[3] According to the Third Circuit, "[t]he proper analysis under Title VII and the Pennsylvania Human Relations Act is identical, as Pennsylvania courts have construed the protections of the two acts interchangeably."  *Weston v. Pennsylvania*, 251 F.3d 420, 426 n.3 (3d Cir. 2001).

respect to his or her compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex."  42 U.S.C. § 2000e-2(a)(1).  "A plaintiff who claims that she has been sexually harassed has a cause of action under Title VII if the sexual harassment was either a *quid pro quo* arrangement, or if the harassing was so pervasive that it had the effect of creating an intimidating, hostile, or offensive work environment.  *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1482 (3d Cir. 1990).   In this case, McGlone asserts a hostile work environment claim.

To establish a hostile work environment claim, a plaintiff must demonstrate that: "(1) the employee[] suffered intentional discrimination because of [her] sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of respondeat superior liability."  *Id*.

After reviewing the evidence, I find that genuine issues of material fact exist as to the elements necessary to prove the existence of a hostile work environment.  Therefore, I deny AVS's motion for summary judgment on this claim.

## B.  Retaliation in Violation of Title VII and the PHRA

Title VII makes it unlawful for an employer "to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).  In deciding a discriminatory retaliation claim, this Court must use the burden shifting test set forth in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973).  *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir. 1997).

The *McDonnell Douglas* framework proceeds in three stages.  First, the plaintiff must establish a prima facie case for unlawful discrimination.  *McDonnell Douglas*, 441 U.S. at 802. To establish a prima facies case of discriminatory retaliation, the plaintiff must demonstrate that: "(1) he or she engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the protected activity; and (3) a causal link exists between the protected activity and the adverse action."  *Weston v. Pennsylvania*, 251 F.3d 420, 430 (3d Cir. 2001).  If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for the adverse action.  *See  McDonnell Douglas*, 411 U.S. at 802.  If the employer succeeds in articulating a legitimate, nondiscriminatory reason, the burden then shifts back to the plaintiff to demonstrate that this reason is in fact pretext.  *Id*. at 804.

After reviewing the evidence, I find that McGlone has established a prima facie case of discriminatory retaliation.  Although AVS has articulated a legitimate nondiscriminatory reason for McGlone's discharge, I find that McGlone has alleged sufficient facts to meet her burden of demonstrating that AVS's reason is pretext.  Therefore, I deny AVS's motion for summary judgment on this claim.

### C.  Intentional Infliction of Emotional Distress ("IIED")[4]

For a plaintiff to prevail on a claim of IIED, the conduct must: (1) be intentional or reckless; (2) be extreme and outrageous; and (3) cause severe emotional distress.  *Wisniewski v.*

---

[4] Because IIED is a state tort, I analyze this claim according to Pennsylvania state law. Although it is unsettled whether the tort of IIED exists in Pennsylvania, for the purposes of this motion, I will assume that it does.  *See Taylor v. Albert Einstein Medical Center*, 754 A.2d 650 (Pa. 2000).

*Johns-Manville Corp.*, 812 F.2d 81, 85 (3d Cir. 1987).   According to the Third Circuit, "[t]he

gravamen of the tort of intentional infliction of emotional distress is that the conduct complained

of must be of an extreme or outrageous type." *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395

(3d Cir. 1988) (internal quotations omitted).   Additionally, "[i]t has been said that 'the conduct

must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds

of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Id.*

(quoting *Buczek v. First Nat'l Bank of Mifflintown*, 531 A.2d 1122, 1125 (Pa. Super. 1987)).

According to the Supreme Court of Pennsylvania, "courts have been chary to allow recovery for

intentional infliction of emotional distress. . . . Cases which have found a sufficient basis for a

cause of action of intentional infliction of emotional distress have had presented only the most

egregious conduct." *Hoy v. Angelone*, 720 A.2d 745, 753-54 (Pa. 1998).   "Described another

way, it has not been enough that the defendant has acted with intent which is tortious or even

criminal, or that he has intended to inflict emotional distress, or even that this conduct has been

characterized by malice, or a degree of aggravation that would entitle the plaintiff to punitive

damages for another tort." *Id.* at 754 (internal quotations omitted).

      As observed by the Third Circuit, "it is extremely rare to find conduct in the employment

context that will rise to the level of outrageousness necessary to provide a basis for recovery for

the tort of intentional infliction of emotional distress." *Id.*   Further, "as a general rule, sexual

harassment alone does not rise to the level of outrageousness necessary to make out a cause of

action for intentional infliction of emotional distress . . . .   The extra factor that is generally

required is retaliation for turning down sexual propositions" *Andrews*, 895 F.2d at 1487.

      McGlone alleges that Figueroa made many offensive comments and on a couple of

occasions came in physical contact with her.  These alleged incidents are clearly inappropriate, but they are not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Cox*, 861 F.2d at 395.  Although an employer's conduct may rise to level of outrageousness necessary for an IIED claim in a sexual harassment case in which an employer retaliates against an employee who turns down a sexual proposition, Figueroa never propositioned McGlone.  My finding that this conduct is not extreme or outrageous comports with the Third Circuit's observation that IIED is extremely rare in the employment context.  Because the conduct at issue was neither extreme nor outrageous so as to go beyond all possible bounds of decency, McGlone's IIED claim fails as a matter of law.  Therefore, I grant AVS's motion for summary judgment on this claim.

## ORDER

**_____AND NOW**, this _16[th] ___ day of May, 2008, it is **ORDERED** that AVS's Motion of

Defendant for Summary Judgment (Doc. #19) is:

- **DENIED** as to the claim of a hostile work environment under Title VII and the

    PHRA;

- **DENIED** as to the claim of retaliation under Title VII and the PHRA; and

- **GRANTED** as to the claim of Intentional Infliction of Emotional Distress.

s/Anita B. Brody

_____

ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:                    Copies **MAILED** on _____ to: